Karthik Nadesan (10217) Email: karthik@nadesanbeck.com
David Jones (10134) Email: david@nadesanbeck.com
Michael Beck (10381) Email: mike@nadesanbeck.com
NADESAN BECK P.C.
8 East Broadway, Suite 625
Salt Lake City, Utah 84111
Telephone:  (801) 363-1140

*Attorneys for Datafly Commerce, LLC.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DATAFLY COMMERCE LLC<br><br>                Plaintiff,<br><br>v.<br><br>THE TRAVEL HAMMOCK INC., doing business as GRAND TRUNK INC.<br><br>                Defendant. | **COMPLAINT**<br><br>Case No. 2:16-cv-00892-DAK<br><br>Judge Dale A. Kimball |

Plaintiff Datafly Commerce LLC ("Datafly"), through counsel, complains against

Defendant The Travel Hammock Inc., doing business as Grand Trunk Inc. ("Grand Trunk"), as

follows:

### PARTIES, JURISDICTION, & VENUE

1.      Plaintiff Datafly is a Utah limited liability company with its principal place of

business in Salt Lake County.

2.      Upon information and belief, Defendant Grand Trunk is a corporation organized

and existing under the laws of Illinois, having its principal place of business in Cook County,

Illinois.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331

as it involves a federal question; under 28 U.S.C. § 2202 as it involves claims related to a patent,

and under 28 U.S.C. § 1332 as the action is between citizens of a State and citizens or subjects of a foreign state, and the amount in controversy in this action, exclusive of interest and costs, exceeds the sum of $75,000.00.

4.      This Court has supplemental jurisdiction over the claims that arise under Utah law pursuant to 28 U.S.C. § 1367(a) because both the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate the state and federal issues be consolidated for a single trial.

5.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as the acts, omissions and events giving rise to Datafly's causes of action occurred within or were directed to this district.

6.      Upon information and belief, Grant Trunk markets, licenses, manufactures, sells, and/or distributes products in Utah.

7.      Upon information and belief, Grand Trunk has intentionally interfered with Datafly's ability to sell and distribute Datafly's products from Utah.

8.      Thus, this Court has specific personal jurisdiction under Utah's long-arm statute, Utah Code Ann. § 78B-3-205, because (1) Grand Trunk has transacted business within Utah; (2) has supplied services or goods in Utah; (3) has caused injury within Utah through its conduct that give rise to this Complaint; and (4) jurisdiction based on Grand Trunk's contacts with Utah (including, but not limited to, its operation of websites and/or sales of goods or services) is not inconsistent with the Constitution of the State of Utah or the Constitution of the United States.

## GENERAL ALLEGATIONS

9.      Datafly realleges and incorporates the preceding paragraphs of this Complaint.

10.      Upon information and belief, Grand Trunk owns the rights, title, and interest to U.S. Design Patent No. D589,735 ("the '735 patent"), entitled "MULTIPURPOSE SHEET."  A copy of the '735 patent is attached at Exhibit A.

11.     Upon information and belief, Grand Trunk owns the rights, title, and interest to U.S. Design Patent No. D551,891 ("the '891 patent"), entitled "COMBINED HAMMOCK, BLANKET, AND SHEET WITH INTEGRAL STUFF SACK."  A copy of the '891 patent is attached at Exhibit B.

12.     Upon information and belief, Grand Trunk has manufactured and sold, and continues to manufacture and sell, the "Parasheet Beach Blanket," a product line of beach blankets with an integrated stuff sack (the "Grand Trunk Blanket").

13.     Doing business under the name Wildhorn Outfitters, Datafly is the manufacturer and seller of the "Sand Escape Beach Blanket," a product line of beach blankets with an integrated stuff sack (the "Wildhorn Blanket").  A photograph of the Wildhorn Blanket is attached at Exhibit C.

14.     Grand Trunk and Datafly are competitors in the outdoor blanket market in that the Grand Trunk Blanket and the Wildhorn Blanket are similar products that are marketed and sold to the same target customers.

15.     On or about July 2, 2016, Jon Neff, a principal of Grand Trunk, sent an email titled "Patent Violation" to Datafly (the "Demand Letter").

16.     The Demand Letter stated as follows:

> You are in violation of our Parasheet Beach Blanket patent.  We are actively collecting information on where you have sold this, how many units have been sold and plan to bring a suit against you.  The outlets you sell to are also customers of ours and have agreed to turn over all sales information, or be held accountable themselves.
>
> You should work on developing your own products and be original.
>
> Our lawyers are involved and will be sending you a cease and desist shortly, we will also be asking for lost revenue associated with your sales.

17.     Among its many distribution channels, Datafly sells the Wildhorn Blanket through "Touch of Modern," an e-commerce website ("Touch of Modern").

18.     Upon information and belief, Grand Trunk contacted Touch of Modern and claimed that Datafly's beach blanket infringed on the '735 patent.

19.     Upon information and belief, Grand Trunk demanded that Touch of Modern cease and desist from further sales of the Wildhorn Blanket.

20.     As a result of Grand Trunk's claims, Touch of Modern has stopped marketing and selling the Wildhorn Blanket until Grand Trunk's infringement claims are resolved.

21.     Touch of Modern's refusal to sell the Wildhorn Blanket due to Grand Trunk's infringement claim has resulted in and continues to result in lost sales to Datafly.

22.     Upon information and belief, Grand Trunk has contacted or is in the process of contacting other distributors and retailers of the Wildhorn Blanket in an attempt to prevent future sales of the Wildhorn Blanket.

23.     Accordingly, the dispute over whether Datafly infringes on Grand Trunk's patents has sharpened into an imminent clash of legal rights and obligations between Datafly and Grand Trunk.

### FIRST CAUSE OF ACTION
**(DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '735 PATENT)**

24.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

25.     Grand Trunk has accused Datafly of infringing its patents, including the '735 patent.

26.     An actual controversy exists between Grand Trunk and Datafly regarding whether Datafly has infringed the '735 patent.

27.     However, the Wildhorn Blanket does not infringe the '735 patent.

28.     Specifically, the Wildhorn Blanket and the '735 patent are sufficiently distinct that an ordinary observer would not find the two designs to be substantially the same or confuse one with the other.

29.    A comparison of the Wildhorn Blanket and the '735 patent reveals, at a minimum, the following dissimilarities:

a.  The proportions of the two designs are different.  The ratio of the length to the width on the '735 patent is greater than the same ratio on the Wildhorn Blanket.

b.  The stuff sack is located on the width of the Wildhorn Blanket but on the length of the '735 patent.

c.  The stuff sack is located in the center of the Wildhorn Blanket but is offset on the '735 patent.

d.  The '735 patent has straps that extend out of the corners of the blanket at an angle, while the Wildhorn Blanket lacks these straps.

e.  The '735 patent has straps extending from the center of each side of the blanket while the Wildhorn Blanket does not.

f.  The'735 patent has two straps attached to the middle of both the bottom and top of the blanket.  The Wildhorn Blanket does not have these straps.

g.  The straps that extend from the sides and corners of the '735 patent are attached by triangle-shaped stitching while the Wildhorn blanket lacks any triangular stitching.

h.  The '735 patent has decorative stitching running down both borders of its length.  The Wildhorn Blanket does not have this stitching.

i.  The '735 patent has additional decorative stitching running down of its length that is inset from the edge.  The Wildhorn Blanket does not have this stitching.

j.  The '735 patent has decorative stitching running down both its widths that connects the triangular stitching.  While the Wildhorn Blanket has stitching running down its width, the stitching is much closer to the center of the blanket.

k.  1The Wildhorn Blanket has four rectangular sand anchor pockets attached at the corners of the widths of the blanket.   The '735 patent lacks these rectangular pockets.

l.  The Wildhorn Blanket has a single rectangular storage pocket to secure personal items attached in the center of the width of the blanket directly opposite the stuff sack.  The '735 patent lacks this pocket.

30.     Furthermore, any similarities between the Wildhorn Blanket and the '735 patent are insignificant in light of the applicable prior art.

31.     Specifically, the prior art contains numerous examples of rectangular-shaped blankets.

32.     Longitudinal and latitudinal lines and stitching have long been used in blankets and sheets

33.     The prior art contains several ornamental examples of an integrated stuff sack for storing a sheet, tablecloth, sleeping bag, or towel.

34.     This case is exceptional in that Grand Trunk's assertion of infringement is frivolous or knowingly baseless.

35.     Accordingly, Datafly is entitled to a judicial declaration that it has not infringed the '735 patent and its reasonable costs and attorney fees.

## SECOND CAUSE OF ACTION
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '891 PATENT)

36.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

37.     Grand Trunk has accused Datafly of infringing its patents, including the '891 patent.

38.     An actual controversy exists between Grand Trunk and Datafly regarding whether Datafly has infringed the '891 patent.

39.     However, the Wildhorn Blanket does not infringe the '891 patent.

40.     Specifically, the Wildhorn Blanket and the '891 patent are sufficiently distinct that an ordinary observer would not find the two designs to be substantially the same or confuse one with the other.

41.     A comparison of the Wildhorn Blanket and the '891 patent reveals, at a minimum, the following dissimilarities:

        a.  The stuff sack is located on the width of the Wildhorn Blanket but on the length of the '891 patent.

      b.  The underside of the '891 patent has triangular pockets with grommet holes attached to each corner while the Wildhorn Blanket lacks these triangular pockets.

      c.  The '891 patent has two lines of decorative stitching running down its length. The Wildhorn Blanket does not have this stitching.

      d.  The Wildhorn Blanket has two lines of decorative stitching running down its width. The '891 patent lacks this stitching.

      e.  The lines of decorative stitching in the '891 patent is located close to the borders and connects the triangular pockets. The decorative stitching in the Wildhorn Blanket is much closer to the center of the blanket.

      f.  The Wildhorn Blanket has four rectangular sand anchor pockets attached at the corners of the widths of the blanket. The '891 patent lacks these rectangular pockets.

      g.  The Wildhorn Blanket has a single rectangular single rectangular storage pocket to secure personal items attached in the center of the width of the blanket directly opposite the stuff sack. The '891 patent lacks this pocket.

42.    Furthermore, any similarities between the Wildhorn Blanket and the '891 patent are insignificant in light of the applicable prior art.

43.    Specifically, the prior art contains numerous examples of rectangular-shaped blankets.

44.    Longitudinal and latitudinal lines and stitching have long been used in blankets and sheets

45.    The prior art contains several examples of an integrated stuff sack for storing a sheet, tablecloth, sleeping bag, or towel.

46.    This case is exceptional in that Grand Trunk's assertion of infringement is frivolous or knowingly baseless.

47.    Accordingly, Datafly is entitled to a judicial declaration that it has not infringed the '891 patent and its reasonable costs and attorney fees.

### THIRD CAUSE OF ACTION
#### (UNFAIR COMPETITION)

48.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

49.     By threatening Datafly and making baseless allegations of patent infringement to Touch of Modern, despite the Wildhorn Blanket not infringing the '735 and '891 patents, Grand Trunk has purposely harmed Datafly's business.

50.     Such conduct constitutes an unfair trade practice and unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125.

51.     Accordingly, Datafly is entitled to a judgment against Grand Trunk for violation of the Lanham Act and holding Grand Trunk liable to Datafly for lost economic opportunities, lost profits, general damages, costs, and attorneys' fees.

### FOURTH CAUSE OF ACTION
#### (PATENT MISUSE)

52.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

53.     Grand Trunk's assertion to Datafly, Touch of Modern, and others that the manufacture or sale of Wildhorn Blanket is a violation of the '735 and '891 patents is an improper expansion of the scopes of those patents.

54.     By claiming that the '735 and '891 patents' protection extends beyond its lawful scope, Grand Trunk has engaged in patent misuse.

55.     Accordingly, all patent rights of Grand Trunk should be suspended or nullified until the misuse is purged.

### FIFTH CAUSE OF ACTION
#### (VIOLATION OF THE UTAH BAD FAITH PATENT INFRINGEMENT LETTERS ACT)

56.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

57.     The Demand Letter to Datafly was an email to a target in Utah asserting or claiming that Datafly had engaged in patent infringement.

58.    The Demand Letter did not contain the patent numbers of the patents being asserted.

59.    The Demand Letter did not specifically identify the name and address of the current patent owner or owners and any other person or entity having the right to enforce or license the patent.

60.    The Demand Letter did not contain the name and address of all persons and entities holding a controlling interest in the current patent owner or owners and any other person or entity having the right to enforce or license the patent.

61.    The Demand Letter did not contain the identification of at least one claim of each asserted patent that was allegedly infringed.

62.    The Demand Letter did not contain a description of one or more allegedly infringing products, including the make, model number, and other specific identifying indicia of allegedly infringing products, services, or methods made, used, offered for sale, sold, imported or performed by the target, provided in sufficient detail to allow the target to assess the merits of the assertion of patent infringement.

63.    The Demand Letter falsely represented that Datafly was in violation of Grand Trunk's "Parasheet Beach Blanket patent" when no such patent exists and Datafly was not infringing on the '735 and '891 patents.

64.    The Demand Letter falsely represented that Datafly would receive a cease and desist letter from Grand Trunk's lawyers.

65.    As a result, the Demand Letter contained a bad faith assertion of patent infringement in violation of Utah Code § 78B-6-1903.

66.    Accordingly, Datafly is entitled to a judgment against Grand Trunk for violation of the Bad Faith Patent Infringement Letters Act and holding Grand Trunk liable to Datafly for equitable relief, actual damages, punitive damages, costs, and attorney fees.  In addition, Grand Trunk should be required to post a bond in an amount equal to a good faith estimate of the Datafly's costs to litigate this claim plus the amount reasonably likely to be recovered.

**SIXTH CAUSE OF ACTION**
**(VIOLATION OF TRUTH IN ADVERTISING ACT)**

67.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

68.     By threatening Datafly and making false representations of patent infringement to Touch of Modern, despite the Wildhorn Blanket not infringing the '735 and '891 patents, Grand Trunk has purposely harmed Datafly's business.

69.     Grand Trunk's false representations regarding Datafly's products violated Utah's Truth in Advertising Act, Utah Code § 13-11a-3.

70.     Accordingly, Datafly is entitled to a judgment against Grand Trunk for violation of the Truth in Advertising Act and holding Grand Trunk liable to Datafly for lost economic opportunities, lost profits, general damages, costs, and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**(TORTIOUS INTERFERENCE)**

71.     Datafly realleges and incorporates the preceding paragraphs of this Complaint.

72.     By threatening Datafly and making false representations of patent infringement to Touch of Modern, despite the Wildhorn Blanket not infringing the '735 and '891 patents, Grand Trunk has purposely harmed Datafly's business.

73.     By using false representations to interfere with Datafly's business, Grand Trunk's interference was through improper means.

74.     Grand Trunk's interference has damaged Datafly's business and caused injury.

75.     Accordingly, Datafly is entitled to a judgment against Grand Trunk for tortious interference and holding Grand Trunk liable to Datafly for lost profits, general damages, punitive damages, and costs.

**RELIEF REQUESTED**

Based on the foregoing allegations, Datafly requests that the Court enter judgment that:

1.     Datafly has not infringed the '735 or '891 patents;

2.      Datafly is entitled to an award of costs and attorneys' fees in this exceptional case in accordance with Section 285 of the Patent Statutes and any other applicable laws, including pre-judgment and post-judgment interest on any such award;

3.      Grand Trunk has violated the Lanham Act and Datafly is entitled to general and consequential damages, lost profits, costs, prejudgment interest and attorneys' fees.

4.      Grand Trunk has engaged in patent misuse and its patent rights are suspended or nullified until the misuse is purged.

5.      Grand Trunk has violated the Bad Faith Patent Infringement Letters Act and Datafly is entitled to equitable relief, actual damages, punitive damages, costs, prejudgment interest, and attorney fees.

6.      Grand Trunk has violated the Truth in Advertising Act and Datafly is entitled to general and consequential damages, lost profits, costs, prejudgment interest and attorneys' fees.

7.      Grand Trunk is liable for tortious interference and Datafly is entitled to general and consequential damages, lost profits, punitive damages, costs, and prejudgment interest.

8.      Datafly is entitled to such additional relief as the Court may deem just and proper.

## JURY DEMAND

Datafly hereby demands a trial by jury on any matters so triable.

DATED this 22nd day of August, 2016.

s/ Karthik Nadesan
NADESAN BECK P.C.
Karthik Nadesan
David Jones
Michael Beck

*Attorneys for Plaintiff Datafly Commerce, LLC*

# EXHIBIT A



US00D589735S

(12) **United States Design Patent**
Kaiser et al.

(10) Patent No.: **US D589,735 S**
(45) Date of Patent: ** **Apr. 7, 2009**

(54) **MULTIPURPOSE SHEET**

(76) Inventors: **Kevin M. Kaiser**, 1316 Hollywood,
Glenview, IL (US) 60025; **Jonathan M.
Neff**, 1316 Hollywood, Glenview, IL
(US) 60025

(**) Term: **14 Years**

(21) Appl. No.: **29/289,940**

(22) Filed: **Aug. 8, 2007**

(51) **LOC (9) Cl.** ................................................ **06-13**
(52) **U.S. Cl.** ................................................ **D6/602**
(58) **Field of Classification Search** ................. D6/582,
D6/583, 595, 596, 602, 603, 608–613; 5/413 AM,
5/413 R, 417–420, 482–486, 494–500; 224/576,
224/577; 428/81
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,634,618 | A | * | 1/1987 | Greer et al. | 428/81 |
| 4,654,906 | A | * | 4/1987 | Roberts | 5/417 |
| D317,841 | S | * | 7/1991 | Mendyk | D6/602 |
| 5,414,881 | A | * | 5/1995 | Terrazas | 5/417 |
| 5,481,768 | A | * | 1/1996 | Shink | 5/482 |
| 5,785,219 | A | * | 7/1998 | Kraft | 224/576 |

| | | | | | |
|---|---|---|---|---|---|
| 6,393,638 | B1 | * | 5/2002 | MacColl | 5/419 |
| D551,891 | S | * | 10/2007 | Kaiser et al. | D6/603 |

* cited by examiner

*Primary Examiner*—Caron Veynar
*Assistant Examiner*—Mary Ann Calabrese
(74) *Attorney, Agent, or Firm*—Law Offices of David L.
Hoffman

(57) **CLAIM**

The ornamental design for a multipurpose sheet, as shown
and described.

**DESCRIPTION**

FIG. **1** is a top perspective view of my multipurpose sheet
showing my new design, the broken lines represent stitching
forming part of the claimed design;
FIG. **2** is a top view thereof;
FIG. **3** is a bottom view thereof;
FIG. **4** is a right side elevational view thereof;
FIG. **5** is a left side elevational view thereof;
FIG. **6** is a rear elevational view thereof; and,
FIG. **7** is a front elevational view thereof.

**1 Claim, 4 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3

Case 2:16-cv-00892-DAK   Document 2   Filed 08/22/16   Page 17 of 25



FIG. 4

FIG. 5

FIG. 6

FIG. 7

# EXHIBIT B



US00D551891S

(12) **United States Design Patent**
Kaiser et al.

(10) Patent No.: **US D551,891 S**
(45) Date of Patent: ** **Oct. 2, 2007**

(54) **COMBINED HAMMOCK, BLANKET, AND SHEET WITH INTEGRAL STUFF SACK**

(76) Inventors: **Kevin M. Kaiser**, 1316 Hollywood, Glenview, IL (US) 60025; **Jonathan M. Neff**, 1316 Hollywood, Glenview, IL (US) 60025

(**) Term: **14 Years**

(21) Appl. No.: **29/263,420**

(22) Filed: **Jul. 20, 2006**

(51) LOC (8) Cl. .................................................. **06-13**
(52) U.S. Cl. .......................................... **D6/603**; D6/595
(58) **Field of Classification Search** ................. D6/386, D6/387, 582, 595, 596, 602, 603, 606, 608, D6/609;  5/102, 122, 123, 416 AM, 413 R, 5/417–420, 485, 489, 490, 495, 496, 502, 5/653;  D3/201, 215, 274, 303;  428/68, 428/81, 35.5;  224/575–577;  2/69.5, 410
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,226,737 | A | * | 1/1966 | Rote ............................... 5/417 |
| 3,633,227 | A | * | 1/1972 | Tegeler ........................ 5/413 R |
| 4,542,050 | A | * | 9/1985 | Gallant ...................... 428/35.5 |
| 4,634,618 | A | * | 1/1987 | Greer et al. ................. 428/81 |
| 4,654,906 | A | * | 4/1987 | Roberts ........................... 5/417 |
| D317,841 | S | * | 7/1991 | Mendyk ..................... D6/602 |
| 5,414,881 | A | * | 5/1995 | Terrazas ......................... 5/417 |
| 5,457,829 | A | * | 10/1995 | Elliott ............................. 5/420 |
| 5,785,219 | A | * | 7/1998 | Kraft ........................... 224/576 |
| 6,393,638 | B1 | * | 5/2002 | MacColl ......................... 5/419 |
| 2006/0024471 | A1 | * | 2/2006 | Cunningham ................ 428/81 |

* cited by examiner

*Primary Examiner*—Robert M. Spear
*Assistant Examiner*—Mary Ann Calabrese
(74) *Attorney, Agent, or Firm*—Law Offices of David L. Hoffman

(57) **CLAIM**

We claim the ornamental design for a combined hammock, blanket, and sheet with integral stuff sack, as shown and described herein.

**DESCRIPTION**

FIG. **1** is an underside perspective view of my combined hammock, blanket, and sheet with integral stuff sack, showing at each corner pockets for sand and grommets;

FIG. **2** is a top view thereof;

FIG. **3** is a bottom view thereof;

FIG. **4** is a right side elevational view thereof;

FIG. **5** is a left side elevational view thereof;

FIG. **6** is a rear elevational view thereof; and,

FIG. **7** is a front elevational view thereof.

**1 Claim, 4 Drawing Sheets**



FIG. 1



*FIG. 2*



**FIG. 3**



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG. 7**

# EXHIBIT C

